Andrew R. Wolf, Esq. (NJ Atty. ID #018621995) awolf@dannlaw.com
Javier L. Merino, Esq. (NJ Atty. ID #078112014) jmerino@dannlaw.com
THE DANN LAW FIRM, P.C.  1520
U.S. Hwy. 130 – Suite 101
North Brunswick, NJ 08902 (732)
545-7900 – TELEPHONE
(216) 373-0536 – FAX

Yongmoon Kim, Esq. (NJ Atty. ID #026122011) ykim@kimlf.com
Mark Jensen, Esq. (NJ Atty. ID #309612022) mjensen@kimlf.com
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601 Tel. &
Fax (201) 273-7117

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HELISHA MOORE, *on behalf of herself and those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>COHN LIFLAND PEARLMAN HERRMAN & KNOPF, LLP; and CHRISTINA N. STRIPP,<br><br>Defendants. | Civil Action No. 23-833 (MAS) (JBD)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br>**and JURY DEMAND** |

Plaintiff, Helisha Moore, individually and on behalf of all others similarly situated, by way of this Complaint against Defendants, Cohn Lifland Pearlman Herrman & Knopf, LLP and Christina N. Stripp states:

## I. NATURE OF THE CASE

1. This class action for damages arises from the Defendants' Cohn Lifland Pearlman Herrman & Knopf, LLP's ("CLPHK") and Christina N. Stripp's ("Stripp") violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

2. As described more fully below, Defendants violated the FDCPA against Plaintiff and other New Jersey consumers by collecting or attempting to collect interest, fees, and charges not permitted by law and by collecting and enforcing and/or attempting to collect and enforce time-barred debts by, *inter alia*, filing collection lawsuits against and using the courts against New Jersey consumers after the statute of limitations to collect on such debts had expired, thereby misrepresenting the amount and status of the debts, attempting to collect amounts not permitted by law, and engaging in unfair and unconscionable debt collect practices.

## II. JURISDICTION AND VENUE

3. Venue is proper in the District of New Jersey because Plaintiff resides in Mercer County, New Jersey and Defendants regularly conduct business in Mercer County, New Jersey including in engaging in unlawful collection activities against New Jersey consumers.

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action primarily arises under the Fair Debt Collection Practices Act (FDCPA), 12 U.S.C. §§ 1692, et seq.

### III.  PARTIES

5. Plaintiff, Helisha Moore ("Moore"), a New Jersey resident, is a natural person.

6. At all times relevant to this lawsuit, Moore was a citizen of the State of New Jersey.

7. Defendant CLPHK is a debt collection law firm located at Park 80 West, Plaza One, Saddle Brook, New Jersey 07663.

8. Defendant Stripp is a debt collection attorney and was, at all times relevant to this action, employed by CLPHK and a citizen of the State of New Jersey.

9. In this pleading, "Defendants" in the plural refers to all Defendants.

10. Defendants have, though the sending of collection letters and filing of collection lawsuits in the State of New Jersey, attempted to collect debts allegedly owed by New Jersey consumers on defaulted loans after the statute of limitations to collect on such loans has expired, as well as charged interest and fees not permitted by law.

### IV.  FACTUAL ALLEGATIONS

11. On August 22, 2014, Helisha Moore entered into an automobile loan agreement with USAlliance Federal Credit Union ("USAFCU") in the amount of $16,317.12, which was used to purchase a 2012 Chevrolet Cruze ("Vehicle"). True and accurate copies of the loan documents are attached as **Exhibit A**.

12. The purpose of the loan and use of the Vehicle which secured the loan was primarily for personal, household, or family purposes.

13. Under New Jersey law, the collateral for the secured loan was consumer goods and the transaction was a consumer goods transaction.

14. The terms of the loan agreement required Ms. Moore to make payments of $367.52 for 72 months, beginning on October 11, 2014.

15. Due to unforeseen financial hardships, Ms. Moore was unable to make payments on the automobile loan with USAFCU in or about January 2016, or earlier.

16. According to USAFCU, Ms. Moore defaulted on the automobile loan on May 11, 2016.

17. Upon default, a cause of action to enforce the debt accrued.

18. After Ms. Moore's default and prior to repossessing the Vehicle, USAFCU accelerated Moore's loan.

19. On July 25, 2016, USAFCU repossessed the Vehicle.

20. On or about July 29, 2016, USAFCU mailed a notice to Ms. Moore entitled: **NOTICE OF CONSUMER'S RIGHT TO CURE DEFAULT AND REDEEM REPOSSESSED PROPERTY** ("Redemption Notice"). A copy of the Redemption Notice is attached as **Exhibit B**.

21. The Redemption Notice provided Ms. Moore with a right to redeem the Vehicle if she paid USAFCU $3,024.79 by August 8, 2016.

22. According to the Redemption Notice, the $3,024.79 redemption amount was comprised of the following:

| | |
|---|---|
| Principal & Interest Balance Due to Date: | $2,299.79 |
| Late Fees Due to Date: | $175.00 |
| Repossession Fees | $400.00 |
| Administrative Fees: | $   150.00 |
| **Toral amount to due to redeem this auto:** | **$3,024.79** |

23. The Redemption Notice was the only notification that USAFCU provided to Ms. Moore after it repossessed her Vehicle and before the disposition of the repossessed motor vehicle.

24. On or about October 18, 2016, USAFCU sent Ms. Moore a Deficiency Letter. A copy of the Deficiency Letter is attached as **Exhibit C**.

25. According to the Deficiency Letter that USAFCU sent to Ms. Moore, the Vehicle was sold on July 25, 2016 for $4,800.00 and on October 18, 2016, Ms. Moore owed it a deficiency balance in the amount of $12,386.45.

26. According to the Deficiency Letter that USAFCU sent to Ms. Moore, USAFCU sold the Vehicle four days prior to sending her the Redemption Notice on July 29, 2016, and fourteen days prior to August 8, 2016, the date on which she was told she could redeem the vehicle.

27. Based on the sales price of $4,800.00 and the redemption amount of $3,024.79, Ms. Moore should have received a surplus of approximately $1,775.21.

28. According to the Deficiency Letter, the $12,386.45 deficiency balance amount was comprised of the following:

| | |
|---|---|
| Principal Payoff Balance as of the Date of Sale: | $14,751.45 |
| Additional Accrued Interest: | $ 1,279.67 |
| Late Fees | $275.00 |
| Remarket Fees: | $480.00 |
| Repo fees: | $400.00 |
| SUBTOTAL: | $17,186.45 |
| Less proceeds of the Sale | $4,800.00 |
| **TOTAL DEFICIENCY BALANCE DUE** | **$12,386.45** |

29. The deficiency balance of $12,386.45 is $9,361.66 more than the amount that USAFCU advised Ms. Moore she could buy back the vehicle for just two months earlier in the Redemption Notice.

30. USAFCU continued to charge Ms. Moore late fees for at least two months after the repossession of the vehicle, as the Late Fees increased by $100, from $175 in the Redemption Notice to $275 in the Deficiency Letter.

31. Ms. Moore did not owe any additional late fees after the loan was accelerated, after the car was repossessed, or after the car was sold.

32. USAFCU continued to charge Ms. Moore interest on the full balance of the loan, allegedly owed after USAFCU accelerated the loan, after the vehicle was repossessed, and prior to selling the vehicle and sending Ms. Moore a deficiency letter.

33. Ms. Moore did not owe interest on the alleged full loan balance after acceleration and repossession of her vehicle, and prior to the sale of the vehicle.

34. USAFCU did not file a lawsuit to attempt to collect the alleged deficiency balance from Ms. Moore until August 23, 2021, more than four (4) years and ten (10) months after it sent Ms. Moore the Deficiency Letter; more than five (5) years and three (3) months after they allege Ms. Moore defaulted on May 11, 2016; and more than five (5) years and eight (8) months after she allegedly defaulted in, at least, January of 2016.

35. The Statue of Limitations in contracts for the sale of goods under New Jersey's Uniform Commercial Code is four (4) years from when the breach occurs. *See* N.J.S.A. 12A:2-725.

36. Defendants are not in the business of extending credit or selling goods to consumers.

37. Defendants regularly collect and/or enforce or attempt to collect and/or enforce past-due or defaulted debts allegedly owed to others which were incurred by New Jersey consumers primarily for personal, family, or household purposes.

38. Defendants are in the business of collecting past-due or defaulted debts or alleged debts of natural persons.

39. In the course of their business, Defendants enforced alleged debts against New Jersey consumers though collection letters, collection lawsuits and, post-judgment collection efforts.

40. On August 23, 2021, Defendants, on behalf of creditor USAFCU, initiated a

collection lawsuit in the Superior Court of New Jersey, Law Division, Mercer County against Ms. Moore in an attempt to collect the auto loan extended to Ms. Moore by USAFCU; the matter is captioned as *USAlliance Federal Credit Union v. Helisha Moore*, Case No. MER-L-1735-21. *See* USAFCU's Complaint, attached hereto as **Exhibit D**.

41. Defendants waited to file the Complaint against Ms. Moore for more than five (5) years after Ms. Moore defaulted on the auto loan and more than one (1) year after the statute of limitations had expired.

42. On January 10, 2022, Defendants moved for default judgment against Ms. Moore in the amount of $28,489.51. *See* USAFCU's Notice of Motion for Default Judgment attached hereto as **Exhibit E**.

43. In the default judgment motion, Defendants claimed that USAFCU was due interest from the period of October 11, 2016, through January 5, 2022, in the amount of $11,354.81.

44. Defendants claimed that USAFCU was entitled to interest at the rate of 17.5% per annum for the time period beginning October 11, 2016, through the date of the entry of judgment.

45. In the default judgment motion, Defendants claimed they were due $4,748.25 in attorney's fees.

46. Defendants misrepresented that, pursuant to the loan documents, Ms. Moore agreed to pay all costs of collecting the amount owed including attorney's fees not to exceed twenty percent (20%) of the principal and interest due and all court costs.

47. The pertinent loan documents did not state that Ms. Moore agreed to pay all costs of collecting the amount owed, including attorney's fees not to exceed twenty percent (20%) of the principal and interest due and all court costs.

48. The loan documents between Ms. Moore and USAFCU actually state:

> "You agree to pay all costs of collecting the amount you owe under this Agreement, including ***reasonable*** attorney fees not exceeding 20% of the principal and interest due and all court costs." (emphasis added). *See* **Exhibit A**.

49. Attorney's fees in the amount of $4,748.25 were not reasonable when Defendants filed the default judgment motion against Ms. Moore.

50. In support of Defendants' motion to enter default judgment against Ms. Moore in the amount of $28,489.51, they filed the Certification of Maryann Little, the Loss Mitigation Manager for USAFCU, seeking judgment in the amount of $28,489.51. A copy of Ms. Little's certification is attached hereto as **Exhibit F**.

51. Ms. Little did not previously file a certification in support of Defendants' attempts to collect this debt.

52. In her certification, Ms. Little stated that, as of January 5, 2022, Ms. Moore now owed a total of $28,489.51, consisting of Principal in the amount of $12,386.45 as of October 11, 2016, interest in the amount of $11,345.81, accrued from October 11, 2016, through January 5, 2022, and attorney's fees in the amount of $4,748.25, which is 20% of the principal and unlawful interest amount. *See* Little Cert. ¶ 4.

53. Attorney's fees in the amount of $4,748.25 were not reasonable when Defendants filed their motion for default judgment against Ms. Moore.

54. Defendants did not submit any, facts, certifications, documents like timesheets, or other information to show or prove that the amount of attorney's fees was reasonable.

55. Upon information and belief, Defendants did not have $4,748.25 in reasonable attorney's fees when they filed the default judgment motion.

56. In their January 10, 2022 motion for default judgment, Defendants failed to comply with R. 4:42-9 where, in their application for attorney's fees, Defendants failed to submit any facts, certifications, documents including timesheets, or other information to show or prove that the amount of attorney's fees was reasonable.

57. New Jersey law requires that, when collateral is repossessed in a consumer transaction, all aspects of the repossession and disposition of the collateral must be commercially reasonable.

58. Defendants utilized the same tactics and strategies when attempted to collect Ms. Moore's alleged debt as they do with numerous other New Jersey consumers.

59. On or about March 30, 2022, Defendants served Plaintiff with an Information Subpoena which indicated in relevant part, "**FAILURE TO COMPLY WITH THIS INFORMATION SUBPOENA MAY RESULT IN YOUR ARREST AND INCARCERATION**" (emphasis in original) and further stated "If you do not answer the attached questions within the time required, the opposing party may ask the court to conduct a hearing in order to determine if you should be held in contempt" (the "Information Subpoena"). A copy of the filled out Information Subpoena is attached as **Exhibit G**.

60. On April 28, 2022, relying upon the information Plaintiff provided in the Information Subpoena, Defendants filed an Application for Wage Execution (the "Application"), attached hereto as **Exhibit H**.

61. Through the Application, Defendants sought a Wage Execution Order to be issued against Plaintiff's salary, to be served on her employer, for "(a) 10% of your gross salary when the same shall equal or exceed the amount of $217.50 per week; or (b) 25% of your disposable earnings for that week; or (c) the amount, if any, by which your disposable weekly earnings exceed $217.50, whichever shall be the least."

62. The Writ of Execution against wages was entered on May 11, 2022; attached hereto as **Exhibit I**.

63. Defendants then served the Writ of Execution on Plaintiff's employer, ordering Plaintiff's employer to begin garnishing Plaintiff's wages.

64. For the pay period of July 10, 2022 – July 23, 2022, Defendants garnished $165.29.

65. For the pay period of July 24, 2022 to August 6, 2022, Defendants garnished $138.07.

66. For the pay period of August 7, 2022 to August 20, 2022, Defendants garnished $118.96.

67. In total, Defendants garnished $422.32 for the pay periods spanning July 10, 2022 to August 20, 2022.

68. Defendants failed to serve Ms. Moore with a copy of the collection action Complaint.

69. The Affidavit of Service states that they left a copy to Mrs. Moore, mother of the Plaintiff, on October 4, 2021. *See* Affidavit of Service attached as **Exhibit J**.

70. This was impossible because Mrs. Moore was in residing in Florida at the time.

71. Plaintiff, through counsel, provided proof that Mrs. Moore was physically in Florida and, therefore, service to Mrs. Moore in New Jersey was impossible. However, Defendants refused to vacate the default judgment.

72. Therefore, on August 8, 2022, Ms. Moore moved to vacate the default judgment and wage execution; the motion was subsequently granted on August 26, 2022. *See* the Order granting Moore's Motion to Vacate Wage Execution and to Vacate Default Judgment, attached hereto as **Exhibit K**.

73. Although the execution against wages was vacated, Ms. Moore experienced several months of wrongful wage garnishment, which deprived Ms. Moore of the ability to use the wrongfully garnished funds.

74. As a result of the wrongfully obtained wage garnishment, Ms. Moore's employer was informed of her sensitive financial situation, which caused fear, anxiety, and embarrassment for Ms. Moore.

75. Further, upon information and belief, the Essex County Sherriff's Office charges fess and/or commissions to garnish a consumer's wages and is still in possession of these fees and/or commissions.

76. Thereafter, in or about October of 2022, the Essex County Sherriff's Office discontinued the wage garnishment against Ms. Moore after Ms. Moore's Motion to Vacate Default Judgment was granted due to USAFCU's and Defendants' defective service of process.

77. At all times relevant hereto, Defendants acted on behalf of USAFCU in an attempt to collect the alleged debt.

78. At all times relevant hereto, the acts and omissions of Defendants were incidental to or taken within the scope of the responsibilities given and authorized by USAFCU.

79. Defendants prosecuted the collection lawsuit against Ms. Moore, including the filing of the motion for default judgment, when the statute of limitations applicable to the auto loan debt had expired. *See* N.J.S.A. 12A:2-725.

80. Defendants regularly collect and/or enforce or attempt to collect and/or enforce alleged consumer debts on which the statute of limitations has expired.

81. The amount which Defendants attempted to collect from Ms. Moore includes amounts not permitted by law, such as commercially unreasonable fees, charges, and interest, as well as unreasonable attorney's fees and costs.

82. Defendants regularly attempt to collect amounts not permitted by law, such as commercially unreasonable fees, charges, and interest, as well as unreasonable attorney's fees and costs.

83. Defendants used the same or substantially similar procedures that they employed when attempting to collect the alleged debt from Ms. Moore when engaging in collection activities against numerous other New Jersey consumers.

84. Therefore, Defendants engaged in unlawful practices in violation of the FDCPA including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f and 1692f(1).

85. As a result of Defendants' unlawful actions, Plaintiff has suffered actual loss in the form of any monies paid as a result of Defendants' wrongful collection activities and subsequent execution against Plaintiff's wages and not returned after the wage execution was vacated.

86. Numerous New Jersey consumers have made payments on time barred debts and on amounts not permitted for collection by law as a result of Defendants' wrongful collection activities.

87. Defendants collected money from New Jersey consumers as a result of unlawful collection activities to collect amounts not permitted by law and/or to collect on accounts in which the applicable statute of limitations had expired.

88. Defendants acted with unclean hands when they took actions in violation of the FDCPA and common law and is not entitled to any equitable relief.

## V. CLASS ACTION ALLEGATIONS

89. Plaintiff brings this action individually and as a class action on behalf of all others similarly situated pursuant to Rule 4:32 of the New Jersey Rules of Court.

90. Subject to discovery and further investigation which may require Plaintiff to modify the following class definition at the time Plaintiff moves for class certification, Plaintiff seeks certification of a Class and a Subclass initially defined as follows:

> **Class**: All natural persons with addresses in the State of New Jersey against whom, beginning January 10, 2022, through and including the final resolution of this case, Cohn Lifland Pearlman Herrman & Knopf, LLP attempted to collect on an alleged secured motor vehicle loan where:
>
> a) the motor vehicle was repossessed;
> b) the loan was in default for more than four years; and/or
> c) the amount collected or attempted to collect contained fees, charges, or interest similar or same as Defendants did against Plaintiff Helisha Moore.
>
> **Subclass**: All members of the Class who paid any money or from whom Cohn Lifland Pearlman Herrman & Knopf, LLP collected any money on the consumer account.

91. Plaintiff seeks to recover declaratory relief and damages on behalf of the Class and attorney's fees and costs to the extent allowed by law.

92. Plaintiff seeks to recover statutory damages, actual damages, restitution, and attorney's fees costs on behalf of herself and all Subclass members under the claims asserted herein.

93. The Class and Subclass for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

94. There are questions of law and fact common to the members of the Class that predominate over questions affecting only individuals, including but not limited to:

> A. Whether Defendants are debt collectors under the FDCPA;
>
> B. Whether Defendants violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692 and 1692f(1);

    C. Whether Plaintiff and the Class are entitled to statutory damages;

95. There are questions of law and fact common to the members of the Subclass that predominate over questions affecting only individuals, including but not limited to:

    D. The common issues for the class set forth above.

    E. Whether Moore and those similarly situated suffered actual damages in the form of all amounts paid to Defendants as a result of Defendants' unlawful collection practices.

    F. Whether Plaintiff and the Class are entitled to actual damages, including all amounts paid as a result of Defendants' unlawful collection practices.

    G. The amounts that the Subclass are entitled to recover from Defendants for damages, disgorgement and restitution.

96. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. A class action will cause an orderly and expeditious administration of the claims of the Class and Subclass and will foster economies of time, effort, and expense by avoiding hundreds of individual suits that will be based on the same legal theories that can be resolved in a single proceeding.

97. Plaintiff's claims are typical of the claims of the members of the Class and Subclass.

98. The questions of law and/or fact common to the members of the Class and Subclass predominate over any questions affecting only individual members.

99. Plaintiff does not have interests antagonistic to those of the Class and Subclass.

100. The Class and Subclass, of which Ms. Moore is a member, are readily identifiable using Defendants' records.

101. Plaintiff will fairly and adequately protect the interests of the Class and Subclass and has retained competent counsel experienced in the prosecution of consumer litigation and class actions. Proposed Class Counsel have investigated and identified potential claims in the

action; have a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

102. The prosecution of separate actions by individual members of the Class and Subclass would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action or the prosecution of separate actions by individual members of the class would create the risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

103. Plaintiff does not anticipate any difficulty in the management of this litigation.

## VI. First Count
### Violations of the Fair Debt Collection Practices Act

104. Plaintiff Moore repeats and realleges all prior allegations as if set forth at length herein.

105. Defendants are "debt collector[s]" within the meaning of 15 U.S.C. § 1692a(6).

106. The alleged debt is a "debt" within the meaning of 15 U.S.C. § 1692a(5).

107. Plaintiff Moore is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

108. The default judgment motion is a "communication" as defined by 15 U.S.C. § 1692a(2).

109. The default judgment motion is an attempt to collect "debt" within the meaning of 15 U.S.C. § 1692a(5).

110. The Application for Wage Execution is an attempt to collect "debt" within the meaning of 15 U.S.C. § 1692a(5).

111. The uploading of the Writ of Execution is an attempt to collect "debt" within the meaning of 15 U.S.C. § 1692a(5).

112. Each of Defendants' garnishments of Plaintiff's wages is an attempt to collect "debt" within the meaning of 15 U.S.C. § 1692a(5).

113. Defendants violated the FDCPA including sections 1692d, 1692e (including 15 U.S.C. §§ 1692e(2)(A), 1692e(5), 1692e(10)), 1692f and 1692f(1) of the FDCPA by filing the default judgment motion on a debt that Defendants knew was time-barred.

114. Defendants violated the FDCPA including sections 1692d, 1692e (including 15 U.S.C. §§ 1692e(2)(A), 1692e(5), 1692e(10)), 1692f and 1692f(1) of the FDCPA by demanding that Plaintiff fill out the Information Subpoena on a debt that Defendants knew was time-barred.

115. Defendants violated the FDCPA including sections 1692d, 1692e (including 15 U.S.C. §§ 1692e(2)(A), 1692e(5), 1692e(10)), 1692f and 1692f(1) of the FDCPA by filing an Application for Wage Execution on a debt that Defendants knew was time-barred.

116. Defendants violated the FDCPA including sections 1692d, 1692e (including 15 U.S.C. §§ 1692e(2)(A), 1692e(5), 1692e(10)), 1692f and 1692f(1) of the FDCPA by uploading a Writ of Execution to the Court docket on a debt that Defendants knew was time-barred.

117. Defendants violated the FDCPA including sections 1692d, 1692e (including 15 U.S.C. §§ 1692e(2)(A), 1692e(5), 1692e(10)), 1692f and 1692f(1) of the FDCPA each time they garnished a debt that they knew was time-barred

118. Based on any one of those violations, Defendants are liable to Plaintiff and the Class for statutory damages, attorney's fees and costs under 15 U.S.C. § 1692k.

119. Based on any one of these violations, Defendants are liable to Plaintiff and the Subclass for statutory damages, actual damages, restitution, and attorney's fees and costs 15 U.S.C. § 1692k.

**WHEREFORE**, as to Count One, Helisha Moore, on behalf of herself and the putative Class and Subclass members, hereby requests a Judgment against Cohn Lifland Pearlman Herrman & Knopf, LLP and Christina N. Stripp,

a. An order certifying that the Cause of Action may be maintained as a class pursuant to R. 4:32-1, including defining the Class, defining the Subclass pursuant to R. 4:32-2, defining the class claims, and appointing Plaintiff as the class representative and the undersigned attorney as class counsel;

b. An award of statutory damages for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

c. An award of statutory damages for the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

d. An award of actual damages for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(1).

e. An award of actual damages for the Subclass pursuant to 15 U.S.C. § 1692k(a)(2)(A).

f. Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(B)(3);

g. For declaratory relief;

h. For pre-judgment and post-judgment interest; and

i. For such other and further relief as may be just and proper.

## VII. SECOND COUNT
### Unjust Enrichment
### Disgorgement on behalf of Plaintiff and the Subclass

120. Plaintiff repeats and realleges all prior allegations as set forth herein.

121. Defendants have been unjustly enriched by the funds that they have received from the Subclass.

122. The funds collected by Defendants have conferred a benefit on Defendants.

123. Defendants know that that they have received a benefit by receiving funds from the Subclass members.

124. Defendants' retention of the benefits conferred on them by the Subclass based on unlawful debt collection practices would be unjust.

125. Defendants should be ordered to disgorge or provide restitution to the Subclass.

126. The disgorgement or restitution should include any profits or other benefits enjoyed by Defendants as a result of the receipt of the Subclass's funds.

**WHEREFORE**, as to Count Two, Helisha Moore, on behalf of herself and the putative Subclass members, hereby requests a Judgment against Defendants,

a. Granting class certification of the Subclass under R. 4:32-1 and R. 4:32- 2;

b. A money judgment for restitution or disgorgement of all amounts collected by Defendants from the Subclass including any profits or other benefit enjoyed by Defendants as a result of receiving and using the funds from them;

c. For attorney's fees, litigation expenses and costs in connection with this action;

d. For pre-judgment and post-judgment interest; and

e. For such other and further relief as the Court deems equitable and just.

## VIII. Jury Demand

Plaintiff demands a trial by jury on all issues subject to trial by jury.

                                              The Dann Law Firm, P.C.

                                              */s/ Andrew R. Wolf*
                                              Andrew R. Wolf, Esq.
                                              Javier L. Merino, Esq.

                                              Kim Law Firm LLC

                                              */s/ Mark Jensen*
                                              Mark Jensen, Esq.

                                              *Attorneys for Plaintiff and the Proposed Class*

Dated: July 19, 2023